[Cite as *State v. Copeland*, 2016-Ohio-7797.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 26842 |
| | : | |
| v. | : | Trial Court Case No. 2014-CR-2192 |
| | : | |
| JOSEPH L. COPELAND | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

**O P I N I O N**

Rendered on the ____18th___ day of ____November____, 2016.

. . . . . . . . . . .

MEAGAN D. WOODALL, Assistant Prosecuting Attorney, Atty. Reg. No. 0093466, 301
West Third Street, 5th floor, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

JOSEPH L. COPELAND, #709-088, Madison Correctional Institution, P.O. Box 740,
London, Ohio 43140
      Defendant-Appellant

. . . . . . . . . . . .

FROELICH, J.

{¶ 1} Joseph Copeland appeals pro se from the trial court's denial of his motion to waive court costs or stay payment.

{¶ 2} Copeland pled guilty to one count of aggravated burglary. The court sentenced him to a mandatory term of five years in prison and imposed court costs. Copeland did not appeal. Nine months later, he filed a "Motion to Vacate or Remit Court

Costs"; in the memorandum to the motion, he requested, in the alternative, that costs be stayed until his release from prison. Copeland alleged that the trial court had failed to inform him of court costs at the sentencing hearing, as it must under R.C. 2947.23(A)(1). Copeland also said that he earns only $17 each month for his work in prison and that anything he needs other than food, shelter, and clothing, he must pay for with that $17. He argues he cannot afford to make payments toward the court costs.

{¶ 3} The trial court overruled the motion. The court stated that it had watched the video of the sentencing hearing and confirmed that it ordered Copeland to pay court costs. As to the stay request, the court pointed out that Ohio Adm.Code 5120-5-03 establishes procedures for withdrawing money from an inmate's account to satisfy court-ordered financial obligations. Division (D) states that withdrawals are allowed to satisfy these obligations "as long as the account retains twenty-five dollars for inmate expenditures." The last line of the trial court's decision "overrule[d] the defendant's request to 'grant him a stay on his court costs until his release.' " The court implicitly rejected Copeland's request that court costs be vacated or waived in their entirety.

{¶ 4} Copeland appeals from the denial of his motion to waive court costs or stay payment. His sole assignment of error alleges that "[t]he trial court abused its discretion when it failed to consider Appellant's present and future ability to pay court costs pursuant to R.C. §2929.19(B)(6)."

{¶ 5} On August 23, 2016, after a preliminary review, we informed the parties that "members of the panel have concerns that certain issues that may be pertinent to this appeal have not been addressed in the parties' briefs." We invited the parties to file supplemental briefs on "whether or what standard of indigency or ability-to-pay factors

must be considered by the trial court," including whether taking court costs from an inmate's prison account is affected by state or federal statutes governing collection of civil judgments, and if so, which court has jurisdiction over taking of court costs from a prisoner account.   The State filed a supplemental brief on September 30, 2016; Copeland did not file a supplemental brief.

{¶ 6} It is well established that court costs are properly *assessed* against a defendant, regardless of the defendant's indigency.   *State v. White*, 103 Ohio St.3d 580, 2004-Ohio-5989, 817 N.E.2d 393.   R.C. 2947.23(A)(1)(a) provides: "In all criminal cases, including violations of ordinances, the judge or magistrate *shall* include in the sentence the costs of prosecution, including any costs under section 2947.231 of the Revised Code, and render a judgment against the defendant for such costs."   (Emphasis added.)

{¶ 7} R.C. 2949.14 expressly authorizes the collection of court costs by the clerk of the common pleas courts against *nonindigent* persons convicted of felonies. However, the Ohio Supreme Court has recognized that "collection from indigent defendants is merely permissive."   *White* at ¶ 14.

{¶ 8} Other statutes also address the collection of court costs.   Effective March 22, 2013, the Ohio legislature amended R.C. 2947.23 to expressly provide that a trial court "retains jurisdiction to waive, suspend, or modify the payment of the costs of prosecution, including any costs under section 2947.231 of the Revised Code, at the time of sentencing or at any time thereafter."   In addition, courts are authorized to cancel all or part of claims for costs due the court, "[i]f at any time the court finds that an amount owing to the court is due and uncollectible, in whole or in part."   R.C.1901.263 (municipal court); R.C.1905.38 (mayor's court); R.C. 1907.251 (county court); R.C. 1925.151 (small

claims division); R.C. 2101.165 (probate court); R.C. 2151.542 (juvenile court); R.C. 2303.23 (common pleas court); R.C. 2501.161 (court of appeals); R.C. 2503.18 (supreme court).

{¶ 9} On appeal, Copeland claims that the trial court erred in failing to consider his present and future ability to pay court costs in denying his motion.[1] In its decision, the trial court briefly discussed the administrative process for withdrawing money from an inmate's account and denied a waiver or a stay of court costs "[g]iven that the defendant will only pay court costs only [sic] if there are sufficient funds in the inmate's account – and only as long as the account retains twenty-five dollars for inmate expenditures." In reaching this determination, the trial court apparently concluded that the Ohio Administrative Code provisions regarding garnishment from inmate accounts control when it is appropriate to require a criminal defendant to pay court costs that were imposed.

{¶ 10} The Ohio Administrative Code contains numerous provisions specifying the sources from which monetary judgments can be collected from inmates and limitations on collection. However, this appeal is not about *collection* of court costs from an inmate, but whether the trial court erred in denying a waiver or stay of future payment of those costs; these are separate questions.

{¶ 11} Although a trial court need not consider whether a defendant has a present

---

[1] Copeland's motion asserted that court costs were not properly imposed at sentencing, but he does not raise this issue on appeal. Regardless, such potential assignment is potentially either barred by res judicata or is moot since, now that R.C. 2947.23(C) allows post-judgment waiver of payment, a defendant may not be able to establish that he or she was prejudiced. *See State v. Weddington*, 4th Dist. Scioto No. 15CA3695, 2015-Ohio-5249, ¶ 3.

or future ability to pay court costs when court costs are assessed, the trial court should consider the defendant's ability to pay when a defendant subsequently moves for a waiver, modification, or stay of the payment of court costs. The collection provisions of the Ohio Administrative Code, while perhaps relevant, are not dispositive. Consequently, the trial court's reliance on those provisions alone in denying Copeland's motion was not an exercise of its discretion in determining whether the payment of court costs should be waived, modified, or stayed.

{¶ 12} The trial court's denial of Copeland's motion will be reversed, and the case will be remanded for consideration of whether Copeland had a present or future ability to pay the court costs imposed.

. . . . . . . . . .

DONOVAN, P.J., concurring:

{¶ 13} I would find that the trial court did abuse its discretion by not determining whether Copeland had the ability to pay the court costs imposed as part of Copeland's felony sentence after the application of Ohio's exemption statute. R.C. 2949.092 does allow a court to waive mandatory costs if "the court determines that the offender is indigent." In the present case, the trial court made no finding of Copeland's indigency or ability to pay, or whether the funds in Copeland's account were exempt from attachment.

{¶ 14} The trial court's reliance on Ohio Admin.Code 5120-5-03 for determining an inmate's ability to pay is insufficient, by failing to consider the entire rule and the statutory authority for the rule, which both provide limitations on the attachment of assets in an inmate's prison account. Most importantly, the statute and the rule mandate the application of Ohio's exemption statute, R.C. 2329.66, which specifically exempts certain

assets from attachment.

{¶ 15} The authority of the Department of Corrections to attach inmate accounts to pay court judgments and to establish rules for processing such payments is found in R.C. 5120.133, as follows:

(A) The department of rehabilitation and correction, upon receipt of a certified copy of the judgment of a court of record in an action in which a prisoner was a party that orders a prisoner to pay a stated obligation, may apply toward payment of the obligation money that belongs to a prisoner and that is in the account kept for the prisoner by the department. The department may transmit the prisoner's funds directly to the court for disbursement or may make payment in another manner as directed by the court. Except as provided in rules adopted under this section, when an amount is received for the prisoner's account, the department shall use it for the payment of the obligation and shall continue using amounts received for the account until the full amount of the obligation has been paid. No proceedings in aid of execution are necessary for the department to take the action required by this section.

(B) The department may adopt rules specifying a portion of an inmate's earnings or other receipts that the inmate is allowed to retain to make purchases from the commissary and that may not be used to satisfy an obligation pursuant to division (A) of this section. **The rules shall not permit the application or disbursement of funds belonging to an inmate if those funds are exempt from execution, garnishment,**

**attachment, or sale to satisfy a judgment or order pursuant to section 2329.66 of the Revised Code or to any other provision of law.**

(Emphasis added.)

{¶ 16} The rule promulgated by the Department of Corrections to establish procedures for attaching an inmate's assets for the payment of a court judgment, Ohio Adm.Code 5120-5-03(C), states:

(C) When a certified copy of a judgment from a court of proper jurisdiction is received directing the DRC to withhold funds from an inmate's account, the warden's designee shall take measures to determine whether the judgment and other relevant documents are facially valid. If a facial defect is found then a letter of explanation shall be sent to the clerk or other appropriate authority and the collection process stops until the defect is cured. If no defect is found, the warden's designee shall promptly deliver to the inmate adequate notice of the court-ordered debt and its intent to seize money from his/her personal account. **The required notice must inform the inmate of a right to claim exemptions and types of exemptions available under section 2329.66 of the Revised Code and a right to raise a defense as well as an opportunity to discuss these objections with the warden's designee. This practice provides safeguards to minimize the risk of unlawful deprivation of inmate property**.

(Emphasis added.)

{¶ 17} Ohio's exemption statute, R.C. 2329.66, exempts specific types of assets from attachment. The record is not developed enough to establish whether the

compensation paid to inmates under the work program or under private employment is considered wages or personal earnings, triggering the exemptions for wages provided by R.C. 2329.66(A)(13)(a). The Department of Corrections Rules describe the rate of compensation for different types of work assignments, which range from three dollars per month to a maximum of twenty-four dollars per month, to be paid to the inmate's personal checking account. Ohio Adm.Code 5120-3-08(A)(1)-(7). Based on the limit of 140 hours per month, the maximum hourly rate available for the inmate work program is 17 cents per hour, although the rate of pay for private employment is not specified. Even if the inmate's assets are not considered "personal earnings", it is clear that the exemption statute, R.C. 2329.66, is applicable to the attachment of inmate assets held in their prison accounts, as recognized by statute, R.C. 5120.133 and by rule, Ohio Adm.Code 5120-5-03.

{¶ 18} The procedure outlined in the Department of Corrections Rules for the attachment of inmate accounts, Ohio Adm.Code 5120-5-03, appears to be a continuous process, which begins upon receipt of a court judgment, and remains in effect until the court judgment is paid in full. The rule specifically provides that,

> If withdrawals are authorized and if there are insufficient funds in the inmate's account to satisfy the amount shown as due, a monthly check shall be issued payable to the appropriate clerk's office or in another matter as directed by the court, for the amount of monthly income received into the inmate's account which exceeds twenty-five dollars until the full amount of the court obligation has been paid. The hold shall remain on the inmate's account until sufficient funds have been paid to satisfy the amount shown

as due on the balance remaining thereon.

Ohio Adm.Code 5120-5-03(E).

**{¶ 19}** The Department of Corrections Rule that allows the attachment of all funds in an inmate's account, as long as $25.00 remain in the account, appears to conflict with the exemption statute, R.C. 2329.66(A)(3), which exempts up to $475[2] of money "on deposit with a bank, savings and loan association, credit union, public utility, landlord, or other person." Before summarily denying Copeland's motion to vacate costs, the trial court should determine whether the exemption statute permits attachment and whether any other applicable statute dictates a finding of indigency.

**{¶ 20}** We have previously concluded that execution of a judgment for court costs entered in a criminal felony sentencing order must be conducted in the same manner as other civil judgments are collected. *Galluzzo v. Galluzzo*, 2d Dist. Champaign No. 2012 CA 43, 2013-Ohio-3647, ¶¶ 6-7; *State v. Springs*, 2015-Ohio-5016, 53 N.E.3d 804 (2d Dist.). Civil judgments are collected under the authority of R.C. 2333.21 which provides as follows:

> The judge may order any property of the judgment debtor that is not
>
> exempt by law to be applied toward the satisfaction of the judgment, but the
>
> earnings of the judgment debtor for personal services shall be applied only
>
> in accordance with sections 2329.66 and 2329.70 and Chapter 2716. of the
>
> Revised Code.

**{¶ 21}** The method of collecting civil judgments outlined in R.C. 2333.21 appears

---

[2] Exemption amounts are annually updated, pursuant to R.C. 2329.66(A)(18)(B). Current exemption amounts are found at http://www.ohiojudges.org/Document.ashx? DocGuid=c6a5f473-62f4-4466-9e4f-aaf7b59c1b66.

to be in direct conflict with the provision in R.C. 5120.133 which authorizes the Department of Corrections to assist the courts in collecting court ordered obligations without compliance with the procedures required for aid in executions including garnishments and attachments of judgment debtors under Chapter 2716 of the Revised Code. The record is not developed to determine whether an inmate's compensation under the work program or private employment while incarcerated is considered "personal earnings", as defined in R.C. 2716.01. If the trial court had conducted a hearing or ordered responsive pleadings to Copeland's motion to vacate costs, the record would have developed a factual basis to facilitate our review.

{¶ 22} In *State v. Chase*, 2d Dist. Montgomery No. 26238, 2015-Ohio-545, we reversed the trial court's denial of a post-conviction motion to vacate costs because the trial court did not make sufficient findings to permit meaningful review of its decision under an abuse of discretion standard. *Id.* at ¶ 17. The minimal facts presented to the court in *Chase* are nearly identical to the facts Copeland presented to the trial court in the case before us. Chase stated that he earns $18.00 a month and Copeland stated that he earns $17.00 a month while incarcerated, which is deposited into a personal prison account. Both stated that out of the prison account, they must pay for their own basic hygiene and health care products and a $2 co-pay each time they seek medical care. In both cases, the trial court summarily denied the motion to vacate costs, without a hearing and without factual findings. In *Chase,* we stated, "[b]ecause the trial court's statutory authority to waive costs is permissive, its decision whether to do so is reviewed under an abuse-of-discretion standard of review. The trial court did not present any reasons or explanation for its decision." *Id.* at ¶ 14. "The lynchpin of abuse-of-discretion review is the

determination whether the trial court's decision is reasonable." *Id.* at ¶ 17, citing *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.,* 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). "Unless the reason or reasons for the trial court's decision are apparent from the face of the record, it is not possible to determine if the decision is reasonable without some explanation of the reason or reasons for that decision." *Id.* Without a full explanation, I am at a loss as to how the trial court could reasonably conclude that a judgment debtor who only earns $17.00 a month is not indigent or has the ability to pay a court ordered judgment for costs. As in the *Chase* case, we should reverse the order of the trial court and remand this cause to the trial court for re-consideration of Copeland's motion, with directions to provide a sufficient explanation of the reason or reasons for the trial court's decision which would permit us to review that decision, should either party choose to appeal, under an abuse-of-discretion standard of appellate review.

{¶ 23} I also note that Copeland's concerns about his inability to file a timely motion had he not been informed at sentencing that court costs were to be imposed are unfounded because his motion is in fact timely. R.C. 2947.23(C) provides: "The court retains jurisdiction to waive, suspend, or modify the payment of the costs of prosecution, including any costs under section 2947.231 of the Revised Code, at the time of sentencing or at any time thereafter." Post-conviction, a defendant may also seek a cancellation of the debt under R.C. 2303.23, which provides, "[i]f at any time the court finds that an amount owing to the court is due and uncollectible, in whole or in part, the court may direct the clerk of the court to cancel all or part of the claim. The clerk shall then effect the cancellation." Thus, the trial court has jurisdiction to consider a post-conviction motion

to waive or cancel an order for costs, and a defendant has the right to appellate review of the decision on that post-conviction motion. I also would reverse and remand this matter for re-consideration of Copeland's ability to pay after application of the applicable exemption statutes to effectuate a meaningful review.

. . . . . . . . . .

HALL, J., dissenting:

{¶ 24} There is no case law, there is no statute, there is no regulation and there is no exercise of discretion which requires a trial court to explicitly consider an incarcerated defendant's ability to pay court costs when ruling on a post-judgment motion to waive or stay payment of court costs. I therefore dissent.

{¶ 25} The imposition of court costs is governed by R.C. 2947.23, and this statute requires a court to impose them "against all convicted defendants, even those who are indigent," *State v. Fuller*, 2d Dist. Montgomery No. 25380, 2013-Ohio-3274, ¶ 18, citing *id.* and *State v. Lux*, 2d Dist. Miami No. 2010 CA 30, 2012-Ohio-112, ¶ 46, citing *State v. White*, 103 Ohio St.3d 580, 2004-Ohio-5989, 817 N.E.2d 393, ¶ 8 (saying that R.C. 2947.23 "*requires* a court to assess costs against all convicted defendants" (Emphasis sic.)). What a court may do, though, is "waive the *payment* of costs." (Emphasis sic.) *State v. Joseph*, 125 Ohio St.3d 76, 2010-Ohio-954, 926 N.E.2d 278, ¶ 11. No law requires a trial court to "consider a defendant's ability to pay, as required by R.C. 2929.19 for the imposition of financial sanctions, before imposing court costs." (Citation omitted.) *Fuller* at ¶ 19. *Accord State v. Lux*, 2d Dist. Miami No. 2010 CA 30, 2012-Ohio-112, ¶ 45 (saying that "R.C. 2929.19 is inapplicable to court costs, and the trial court need not consider a defendant's ability to pay under R.C. 2929.19 prior to imposing court costs"). Therefore,

the trial court here did not err if it did not consider Copeland's ability to pay before imposing court costs. If there is no requirement to consider ability to pay at the time of court cost imposition, I fail to see how a trial court is required to consider ability to pay when a post-judgment motion to waive or suspend collection of court costs is filed one week, one year or five years later. There is simply no precedent or statute to support such a notion.

{¶ 26} Because authority for a trial court to consider a request for waiver of court costs subsequent to sentencing did not exist until the amendment of R.C. 2947.23(C), effective March 22, 2013, there is little case law on what a post-sentence waiver entails. However, it is clear that the Supreme Court has previously held that a decision whether to waive payment of court costs, at least at sentencing, is reviewed on an abuse of discretion standard. *State v. Threatt*, 108 Ohio St.3d 277, 2006-Ohio-905, 843 N.E.2d 164, ¶ 23. That case also concluded "R.C. 5120.133(A), which permits the Department of Rehabilitation and Correction to deduct payments toward a certified judgment from a prisoner's account without any other required proceeding in aid of execution, is merely one method of collection against defendants who are incarcerated (and therefore are most likely indigent)." *Id.* ¶ 13. If a trial court is not required to consider ability to pay court costs upon imposition, and if deduction of payments from a prisoner account is specifically authorized by statute (R.C. 5120.133), "as long as the account retains twenty-five dollars for inmate expenditures" (Ohio Adm.Code 5120-5-03(D)), then a trial court does not abuse its discretion if it does not consider ability to pay when ruling on a post-sentence motion to waive court costs. We have previously found no abuse of discretion when a trial court refused to grant a waiver of court costs for a prisoner serving a 22-year sentence

who had costs collected from his meager prisoner account. *State v. Hawley*, 2d Dist. Montgomery No. 25897, 2014-Ohio-731. If we were unable to find an abuse of discretion in *Hawley*, then there is no abuse of discretion with respect to Copeland whose sentence will end in less than 3 more years.

{¶ 27} Likewise, on this record, there is no basis upon which to consider potential exemptions from collection. Appellant does not assert that the Ohio Department of Rehabilitation and Corrections (ODRC) failed to comply with Ohio Adm.Code 5120-5-03 or that he raised possible exemptions or defenses under those rules. Even if he did, the trial court in Montgomery County, Ohio does not have jurisdiction over ODRC actions at Madison Correctional Institution, in Madison County, where Copeland is incarcerated. On this record we have no assigned error, no record to support a claimed exemption, a statute that specifically authorizes the payment, and no authority to consider the possibility of any potential exemption that is superseded by R.C. 5120.133.

{¶ 28} Finally, although I am firmly convinced that the trial court was not required to consider ability to pay, the record does not support a conclusion that the trial court failed to do so. The trial court pointed out that Ohio Adm.Code 5120-5-03 establishes procedures for withdrawing money from an inmate's account to satisfy court-ordered financial obligations. Division (D) states that withdrawals are allowed to satisfy these obligations "as long as the account retains twenty-five dollars for inmate expenditures." In my opinion, the trial court recognized that statutory policy decision that the legislature has made determining that a prisoner does have an ability to pay provided that a minimum of $25.00 remains in the prisoner's account.

{¶ 29} For all these reasons, I dissent.

. . . . . . . . . . . . .

Copies mailed to:

Meagan D. Woodall
Joseph L. Copeland
Hon. Dennis J. Langer